TAYLOR, executor, etc., *et al.* v. DODD *et al.*, appellants.

*Will — construction of — " estate."*

A will contained the following provision: " I give and bequeath to G. S. B. my stone store and $10,000 in money *out of my estate.*" The testator's personal property was insufficient to pay the legacy, but he left valuable real estate, more than sufficient for that purpose. By a clause in a codicil to the will, he directed his executors to sell as much of his *real estate* as in their discretion and judgment should be for the best interest of " my estate ; " also, that certain of his " real estate " should not be sold until necessary for a final settlement of " my estate." There was no residuary devise. *Held,* that by the term " my estate," the testator intended all his property, both real and personal, and that, after exhausting the personal property, the remainder of the legacy should be paid from the real estate.

Taylor v. Dodd.

APPEAL from a judgment entered upon the decision of a justice at special term, giving judicial construction to the provisions of a will and codicil.

The testator, Joshua H. Story, died in April, 1871, at Cooperstown, Otsego county, leaving a will and codicil which were duly admitted to probate by the surrogate of that county. The will contained about twenty-six clauses, besides a codicil containing two clauses. The testator was unmarried, leaving one brother, George Story, one of the executors and one of the plaintiffs, and three sisters, one of whom, Eliza M. Taylor, is also executrix and plaintiff, and Mary Bradford and Fanny T. Hall, who are defendants in the action, his only heirs at law. The other defendants are either legatees named in the will, or are the representatives of parties claiming interests in the estate. The testator died seized of real estate not specifically devised as such, of the value of $173,808.66, which was subject to mortgages to the amount of $48,845.86. He left also personal property including articles specifically bequeathed of the value of $95,000, and was owing debts, exclusive of the mortgages, to about $79,000. The expenses of administration have amounted to about $12,000.

There were no mortgages upon the real estate which was specifically devised. There was a power of sale given in the codicil to the executors, to sell and convey a large portion of the real estate, under which power they had disposed of a considerable part of the real estate, and had received therefor, including rents, the sum of $108,458.17. Of this amount they had paid on account of mortgage liens and interest upon all the mortgages, $32,181.56. The real estate remaining unsold, and which they had the power to sell, was estimated to be worth $65,000. Upon this there are mortgage liens of about $16,000. From the avails of real estate sold and unapplied, and of sales of personal property exclusive of specific articles bequeathed, the executors have sufficient means in hand to pay and satisfy in full all the testator's debts, expenses of administration, and all the legacies; but not including the mortgage debts upon the real estate unsold. These facts are not materially, if at all, controverted. Upon these facts, and the provisions of the will and codicil the judge, upon the trial, found "no satisfactory evidence of an intent on the part of the testator to charge his real estate or any part of it with the payment of legacies," and held that the real estate was not so charged. He also held as legal conclusions,

*First.* That the pecuniary legacies given in and by said will and codicil are not, nor are any of them, chargeable upon, or to be paid from, the proceeds of the real estate of the testator, in any event whatever."

*Second.* That "the residuum of said real estate of which said testator died seized, not devised by said will or codicil, descends to the heirs at law of said testator, to wit: George Story, Eliza M. Taylor, Mary Bradford, and Fanny Hall, as tenants in common in fee, subject to the power of sale given to the executors by the codicil of said will." Exceptions were duly taken by the parties interested, and appeal taken to this court from said judgment. Such portions of the said will and codicil as are material to the examination and review of the case will appear in the opinion.

*E. Countryman,* for appellants.

*E. M. Harris* and *H. Sturgis,* for respondents.

P. POTTER, J. In the construction of wills there are a few well-established, uniform rules which apply to all cases, and which are cited in all cases, whatever may be the question at issue, to wit: 1. "That the intentions of the testator shall always prevail if they are consistent with each other, and conformable to the principles of law." 2. "That the language used shall receive its ordinary interpretation, except where some other interpretation is necessarily or clearly indicated." 3. "Where words are equivocal that construction shall be given which will preserve consistency, in preference to one which would create inconsistency." 4. "If it be possible some effect shall be given to each distinct provision of a will, and every word and sentence shall be held to have a meaning and express some intent, rather than that they should be annihilated."

Beyond these general rules it is difficult for courts to add rules of construction, applicable alike to all cases. The diversity in the form and language of wills is only equaled by the diversity in the character of minds of those who assume the duty and responsibility of preparing the instruments. Comparatively few are drawn by men of professional skill. In cases where this is manifest from the language of the instrument itself, it is the duty of courts, so far as the rules of law will permit, to give this circumstance consideration, and to give effect to the intention of the testator as deduced from

the language of the will, read in the light of the circumstances which surround the testator at the time of its execution, the age and condition of the testator as well as that of his relatives and friends who have surrounded him in life, and from whom he may have received kind attentions, and of those of his blood, or who may be dependent upon his bounty; the amount and condition of his property, of his debts and liabilities, and the character of his habits and associations. All these are circumstances which may be looked at in order to give force or construction to defective or inartificial language employed in the will, and in order to ascertain the true intent of the testator. It is apparent from the reading of the will and codicil in question that they were not drawn by one professing professional skill, familiar with, or possessing knowledge of, the import of technical words. It is clearly apparent from the fact of making a will that the testator did not intend to die intestate, and leave all his estate to a legal inheritance.

It is beyond all question that the testator did intend to give his *estate* to the several legatees and devisees named in his will, and codicil in the amounts and in the articles therein respectively specified. This *intent,* being expressed in clear and unequivocal language, ought not to be defeated by judicial construction without an imperative necessity arising from some other later or express provision of the will coming in direct conflict with or repugnant to it. The estate of the testator was abundantly sufficient to meet and satisfy all these express bequests. He is to be presumed to have intended that all the express provisions of his will should be carried into effect. He is to be presumed to have made this disposition of his estate in view of the sufficiency of the estate to meet the bequests, and in view of the surrounding circumstances existing at the time of making it. He is not to be presumed ignorant of the amount of his personal estate — of the amount of his indebtedness at the time — that his personal estate would be insufficient to meet those debts, that his personal estate must be first applied to the payment of his debts, and to meet the expenses of administration.

It is under such circumstances and with such knowledge that this will and codicil was made, and from which construction is to be given.

The first clause of this will is in the following words: " *First,* I give and *bequeath* to George S. Bradford, my stone store on the south side of Main street, in the village of Cooperstown, and ten thousand dollars ($10,000) in money *out of my estate.*"

The construction to be given to this clause of the will is materially controlling as to many other provisions of the will and codicil. The inappropriate use of the term "*bequeath*," as applied to real estate, cannot, of course, affect the intention of the testator, it is a good specific devise of real estate. This word "*bequeath*" is connected by the conjunction "*and*" to' the gift of $10,000, and by grammatical reading makes both the devise of real estate and the bequest of money to come "out of my estate." But the important question to be determined here is, what did the testator mean by the words "*out of my estate?*" Did he mean his whole estate, real and personal? Applying the rules of construction above laid down, and reading the language of this clause in the light of the circumstances surrounding the testator at the time, I am of opinion that he intended that George S. Bradford should have out of his whole estate as well the $10,000 as the stone store. Both gifts are contained in one connected sentence, and he has estate enough to satisfy both. There is nothing in any other clause of this will from which it may be implied that he did not by the word "*estate*" mean his whole estate, real and personal, but there is much in it from which to infer that he did so intend. In common parlance a man's estate means his whole estate. This word is to receive its ordinary interpretation. In giving it this interpretation, effect can be given to every provision of the will, and every devise and legacy satisfied. In the case of *Bridgewater* v. *Bolton*, 1 Salk. 237, the court, per HOLT, J., in giving construction to the language of a will, among other things, said: "The word *estate* is *genus generalissimum*, and includes all things real and personal." And again, "In a will the testator is not tied up to form; it is enough that he expresses and signifies his meaning in any words." This case was cited with approbation in *Jackson* v. *Robins*, in the court of errors, 16 Johns. 587.

In *Archer* v. *Doneale*, 1 Pet. 588, Chief Justice MARSHALL said that "the word '*estate*' is sufficiently comprehensive to embrace property of every description, *and will charge lands with debts if used with other words which indicate an intention to charge them.* This is a proposition that cannot be controverted." In *City of Boston* v. *Inhabitants of Dedham*, 4 Metc. 178, construction was given to the word "*estate*" in a statute defining the gaining of a settlement, as follows: "Any person of twenty-one years of age, being a citizen of this, or of any of the United States, having an

estate, the principal of which shall be set at £60, etc., shall thereby gain a settlement."

The court say, " the leading and most prominent objection taken by the defendants is, that the term *'estate,'* as used in the statute cited, means exclusively real estate, and that a valuation and assessment upon *personal property* do not bring the case within the statute." " This," say the court, " in our opinion, is too restricted a definition of the term *' estate.'* The term is of very broad and extensive application, and clearly comprehends personal as well as real estate." In *Lovacres* v. *Blight,* Cowp. 355–6, Lord MANSFIELD said, " In general, whenever there are words or expressions, either general or particular, or clauses in a will which the court can lay hold of to enlarge the estate of a devisee, they will do so to effectuate the intention. * * * The question is always one of construction, and depends upon observations naturally arising out of the will itself." *Lambert's Lessee* v. *Paine,* 3 Cranch, 101. The case of *Roe* v. *Harvey,* 5 Burr. 2638–9, was an issue between devisee and heir upon the construction of the clause in a will, as follows: " All the rest and residue of my *' estate.' "* Lord MANSFIELD said, " the word *' estate '* carries every thing unless tied down by particular expressions." This case is also cited with approbation in court of errors. 16 Johns. 587; see, also, *Holdfast* v. *Marten,* 1 Durnf. & E. 411; *United States* v. *Crookshank,* 1 Edw. Ch. 239 ; *Havens* v. *Havens,* 1 Land's Ch. 334.

In view of the provisions of this will and codicil — of the conditions of the testator's estate, — of the presumption of his knowledge of the extent of his personal estate and of the extent of his debts which must necessarily exhaust the personal, — of his expressed intent to bequeath to many friends and relatives large sums in the aggregate which could only be satisfied from his *estate* using the term in its most comprehensive as well as its most natural and legal sense, and in giving effect to every provision of the will, I find no difficulty in holding that the testator intended that this legacy of $10,000, as well as other legacies subsequently mentioned in the will and codicil, should be paid " out of his estate which, in his meaning and intent as well as in law, is to be held to mean his whole estate. This conclusion is not in conflict with that numerous class of cases in which it is held that the personal estate is the primary fund for the payment of legacies as it is first for the payment of debts, and that the real estate is not to be charged with

the payment of legacies unless the intention of the testator is expressly so declared, or that such intention is clearly to be implied from the terms and provisions of the will. The case at bar, it seems to me, is within both these exceptions. By proper legal construction, the words " out of my estate " are to be held to mean the whole estate of the testator and by necessary implication from other provisions of the will and the known insufficiency of the personal estate to satisfy the bequests and devises, such intent is also to be inferred. These inferences may be drawn from the following, among other provisions. By the second clause of the codicil he authorizes his executors to sell and convey such portions, parcels or lots of his *real estate* as in their discretion and judgment shall be for the best interest and advantage of "*my estate*." As he himself here distinguishes between his "*real estate*" and "*his estate*," and as the former may be sold to benefit the latter, we must give "*my estate*" in this clause, and the same words in the first clause of the will, the same interpretation. Then again in the same codicil, he expresses his will that certain of his "*real estate*" be not sold until certain contingencies happen, and among these contingencies is this, "until it shall be necessary for a final settlement and distribution of *my estate*," that is, he directs his "*real estate*" then to be sold to make up "*his estate*," for distribution and settlement.

This would be an absurd provision if his heirs at law were to take it when sold, but a very reasonable and sensible provision, if it was to be distributed to the devisees and thus settled. The delay which is directed in the codicil as to the sale of this portion of his real estate is in harmony with the time of payment of some of the legacies, the time for the payment of which was postponed, one of which was to be paid at the end of eight years "*out of my estate.*" It appears to me, indeed, that all the provisions of this will and codicil distinctly evince an intent on the part of the testator, that "*his estate*," which is abundantly sufficient to that end, should pay the legacies directed thereby. In so interpreting the will, the whole letter as well as the spirit of the instrument is preserved, made effective and satisfied, and a large residuum is left to be divided among the heirs at law. The lands which will descend to them, by law, must bear the burden of the mortgages thereon, according to the maxim *transit terra cum onere*. 2 Pow. on Devises, 673–4. These mortgages and interest are not to be satisfied at the

expense of legacies in the will, either specific or pecuniary. *Rider* v. *Wager*, 2 P. Wms. 335.

The interpretation given to this will and codicil at the special term (except as to two or three specific devises) nullifies these instruments, makes void the express bequests, and holds that notwithstanding the express declaration of intent to distribute a portion of his estate to his friends and relatives, to some of whom he acknowledges his obligations for kind services as the consideration, the gift is a nullity, and that the testator, notwithstanding the will, died intestate.

This does not appear to me to be the natural or legal view or to express the intent of the testator by the language " *out of my estate*," the testator blended his real and personal assets in his mind, into *his estate*, as one estate, his language was singular, " *my estate*," not estates; indeed he directed his real estate to be sold for the best interests of *my* " *estate*," I think the court are bound to carry the testator's intent as we find it to be, into execution by judgment.

The result is that the judgment below must be reversed and judgment ordered, 1st, declaring that the pecuniary legacies given in and by said will and codicil be chargeable upon the real estate, after the payment of the testator's debts and expenses of administration from the personal and the proceeds of real estate in the hands of the executors, and directing the said executors to pay and satisfy the said bequests, according to the directions contained in said will and codicil; 2d, directing the articles of personal property specifically bequeathed in said will to be paid and delivered over to the persons named as legatees therein, according to the directions of the said will; 3d, to carry out the provisions of said will and codicil as to the case of the Miller farm, and as to investing $7,000, the income of which is to be applied to the improvement of the cemetery lot as directed by the last clause of the will, and also as to investing $5,000 for Ellen McNamee and for the payment of the principal as directed in the first clause of the codicil; 4th, that the residuum of the said estate, real and personal, after the payment of the testator's debts and the expenses of administration and costs, and the payment of the pecuniary legacies, and satisfying the specific devises of real estate, and the specific bequests of articles of personal property descend to the heirs at law of the said testator, to wit, George Story, Eliza M. Taylor, Mary Bradford and Fanny Hall as tenants in common; 5th, that the several parties to this

action who appear by attorneys are entitled to costs and disbursements taxable to be paid out of the estate. If more than one attorney appears for parties representing the same interest, but one bill of costs and disbursement is to be allowed to be divided among the attorneys representing such interest.

MILLER, P. J., and PARKER, J., concurred.

*Judgment accordingly.*